Filed 7/9/21  Aubert v. Hino Motors Manufacturing U.S.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RICHARD J. AUBERT, | |
| Plaintiff and Appellant, | E073248 |
| v. | (Super.Ct.No. CIVDS1824212) |
| HINO MOTORS MANUFACTURING U.S.A. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino.  Donald R. Alvarez, Judge.

Affirmed.

Richard J. Aubert, Plaintiff and Appellant in pro. per.

Baraban & Teske, Jeffrey H. Baraban, and James S. Link for Defendants and

Respondents Hino Motors Manufacturing U.S.A., Brenda Beltran, Carlos Scoltock,

Jessica Serrano, Baraban & Teske, Jeffrey H. Baraban, Christopher S. Teske, and James

S. Link.

1

Cole Huber LLP, Daniel S. Roberts, and Nicole R. Roggeveen for Defendant and Respondent Officer Jorge Sandoval.

Plaintiff Richard J. Aubert filed this action in propria persona. Basically, he alleges that, in a previous action, a key witness's trial testimony was contradicted by her previous statement to a police officer; Aubert was unable to impeach her, however, because her attorneys had gotten the trial court to exclude the police report. As a result, Aubert lost that case.

The defendants demurred to Aubert's original complaint. While the demurrers were pending, Aubert filed an amended complaint. Because he filed it without leave of court, after the time to file an opposition to the demurrer had passed, it was a nullity. (See Code Civ. Proc., § 472, subd. (a).)

At the hearing on the demurrers, the trial court sustained them, with leave to amend; it struck the amended complaint. It cautioned Aubert "to think about how you want to proceed with this," because, if a new amended complaint had the same defects as the original complaint, "that's going to be a problem."

Aubert did file a new amended complaint, and it did have the same defects as the original complaint. The trial court therefore sustained a new round of demurrers, without leave to amend.

Aubert appeals. We will conclude that he has forfeited any contention that is not fairly stated in the headings of his brief. (Cal. Rules of Court, rule 8.204(a)(1)(B).) That leaves only his contentions that:

(1)  The trial court should have required the defendants to respond to his first amended complaint and should have continued the first demurrer hearing for that purpose.  We reject this contention for several reasons, including that, as already noted, the first amended complaint was a nullity.

(2)  The trial court was biased against Aubert, as shown by its actions and comments at the first demurrer hearing, especially its comment, "that's going to be a problem."  We reject this contention because Albert forfeited it by failing to raise it below and by failing to file a prompt writ petition; separately and alternatively, we also reject it because the trial court's comments were correct and fair.

Aubert has not properly preserved any contention that the trial court erred by sustaining the demurrers to his second amended complaint.  Nevertheless, if only out of any excess of caution, we address some comments in his brief to this effect.

Finding no error, we will affirm.

I

STATEMENT OF FACTS

Because this case comes to us on appeal from the trial court's sustaining of a demurrer, "we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  We . . . also consider matters subject to judicial notice.  [Citation.]"  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. omitted.)

3

An employee of Hino Motors Manufacturing U.S.A. (Hino Motors) ran a red light and hit Aubert. Aubert filed a personal injury action against Hino Motors and the employee.

In 2012, Aubert and a process server drove to Hino Motors's premises in Ontario to serve the summons and complaint. Aubert sat in the parked car while the process server went inside, left the summons and complaint in an envelope, and came back.

Brenda Beltran, an employee of Hino Motors, came out carrying the envelope. She allegedly hit Aubert in the face. She kept trying to hit him, but he put up his arm to block her blows. Finally, she threw the envelope on the ground and walked away.

Six months later, Aubert went to the Ontario Police Department to file a police report about the alleged assault and battery. Officer Jorge Sandoval took his report. Officer Sandoval allegedly urged Aubert not to file the report, saying he knew Hino Motors' personnel and they were "good people."

Officer Sandoval interviewed Beltran. She denied hitting anybody. She said she placed the envelope in the car, but Aubert pushed it back out; it fell to the ground, and she walked away.

When Aubert read Officer Sandoval's police report later, he found that it omitted crucial facts. He filed a complaint with the Internal Affairs Division of the Ontario Police Department.

4

In 2013, Aubert filed a second action (underlying action), arising out of the alleged assault and battery, against Hino Motors and Beltran.[1] He asserted two causes of action, for battery and for falsifying a police report.

Hino Motors and Beltran were represented by Jeffrey H. Baraban, Christopher S. Teske, and James S. Link of Baraban & Teske. They filed an anti-SLAPP motion (see Code Civ. Proc., § 425.16) as to the cause of action for falsifying a police report, which was granted.

Allegedly Beltran, with the connivance of her attorneys, gave false testimony at the trial. Specifically, she testified that she thought the process server had left the envelope by mistake. She went outside to return it. The car was starting to leave. As she approached it, Aubert raised his arm, indicating that he did not want the envelope. She dropped the envelope on the ground and went back inside. She never got closer than 12 feet to the car. Somehow, as a result of the ruling on the anti-SLAPP motion, Aubert was unable to use the police report, including her prior inconsistent statements to Officer Sandoval, to impeach her.

Two other employees of Hino Motors — Carlos Scoltock and Jessica Serrano — also allegedly testified falsely that Beltran had told them that she never came closer than 12 feet to the car.

---

[1] According to counsel for Hino Motors, sometime before this, Aubert's original action arising out of the car accident had been settled.

5

The jury in the underlying action found that Beltran did not commit battery. The trial court therefore entered judgment in that action against Aubert.

II

STATEMENT OF THE CASE

Aubert filed this action in 2018. The original defendants fell into two groups, represented by separate counsel: (1) Hino Motors, Beltran, Scoltock, and Serrano, Baraban & Teske, Baraban, Teske, and Link (collectively Hino); and (2) the City of Ontario, the Ontario Police Department, and Officer Sandoval (collectively Ontario). Aubert had not filed a government claim.

The defendants filed demurrers. They argued that:

(1) The fraud causes of action failed to allege justifiable reliance;

(2) The action was barred by the litigation privilege (Civ. Code, § 47, subd. (b));

(3) The action was barred by the statute of limitations;

(4) The action was an impermissible collateral attack on the judgment in the underlying action; and

(5) As to Ontario only, the action was barred by failure to file a governmental claim.

After the time to file an opposition had expired (see Code Civ. Proc., § 1005, subd. (b)), and shortly before the hearing date, Aubert filed an amended complaint (first amended complaint), without leave of court. It asserted nine causes of action, including six for fraud and one for intentional infliction of emotional distress.

At a hearing on January 3, 2019, Aubert mentioned that he had filed an amended complaint. Counsel for Ontario objected that it had been improper to do so without leave of court. The trial court therefore struck the first amended complaint. It sustained the demurrers, with leave to amend.

Aubert then filed another amended complaint (second amended complaint). It differed from the first amended complaint. In an apparent effort to get around the government claim requirement, it disclaimed any cause of action against the City of Ontario and the Ontario Police Department (although it still listed them in the caption),[2] and it purported to name Officer Sandoval solely in his individual capacity. It asserted just two causes of action, for fraud and for intentional infliction of emotional distress.[3]

Hino and Officer Sandoval filed demurrers. They raised the same arguments as in the first round of demurrers. The trial court sustained the demurrers, without leave to amend. It therefore entered a judgment of dismissal.

---

[2]     The second amended complaint therefore operated as a voluntary dismissal of the City of Ontario and the Ontario Police Department. (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1142-1143.) They were no longer proper parties to the action. They filed demurrers — understandably, to be on the safe side — but there was nothing for them to demur to.

Thus, they are also not proper parties to this appeal. We deem their briefs to be filed on behalf of Officer Sandoval alone.

[3]     The caption of the complaint also referred to causes of action for "violations of civil rights" and "intentional use of false evidence" (capitalization altered). No such causes of action, however, were actually pleaded. The trial court noted for the record that there were only two causes of action, then asked, "[A]m I correct?" Aubert did not disagree. Moreover, he does not contend that this was error.

## III

## AUBERT'S CONTENTIONS

We begin by identifying the issues that Aubert is raising on appeal.

A brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority . . . ."  (Cal. Rules of Court, rule 8.204(a)(1)(B).)

"The requirement[] that issues be . . . presented under a separate argument heading, showing the nature of the question to be presented and the point to be made, [is] part of the "'[o]bvious considerations of fairness'" to allow the respondent its opportunity to answer these arguments [citation] and also "'to lighten the labors of the appellate [courts] by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass"' [citation].  [Citation.]" (*People v. Roscoe* (2008) 169 Cal.App.4th 829, 840.)

"'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.'  [Citation.]"  (*Petrovich Development Company, LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 976, fn. 9.)

One of Aubert's headings[4] — "Rush to injustice, surprise versus duty" — suggests a contention that the trial court should have granted a continuance.[5]

Two more headings — "Court bending over to give one side a favor and advantage" and "An attitude/bias problem at the start" — make it reasonably clear that he is contending that the trial judge was biased against him.

The heading "Argument; the ability to be cured" suggests a contention that the trial court should have given him an opportunity to cure the defects in his second amended complaint by sustaining the demurrers with (rather than without) leave to amend. Under this heading, however, what he actually argues is that the second amended complaint was not defective at all. That contention has been forfeited.

Another heading — "Prejudice, yes!" — makes it clear that Aubert is claiming prejudice; however, it does not identify any particular asserted error. The remaining headings fail to summarize any argument at all, even when viewed against the factual and procedural background revealed by the record.[6]

_____

[4] All quotations from Aubert's briefs and other filings have been corrected for spelling and grammar and may have altered capitalization.

[5] This interpretation is confirmed by a subheading in his statement of facts, "Continuation always an option for incomplete circumstances or surprise."

[6] These headings are: (1) "No way to straighten court's curves"; (2) "Chances to correct positions"; (3) "Resistance to give diligence to rights and duty"; (4) "Signed and sealed abuse"; (5) "Discussion summary, court was not hearing"; (6) "Fruit of the poisonous tree"; (7) "Analysis II, court's influence"; and (8) "Conclusion."

We deem any contentions other than (1) failure to grant a continuance and (2) judicial bias forfeited for this reason.[7] We do discuss some contentions that have not been properly raised, but only to reject them on alternative grounds.

IV

FAILURE TO CONTINUE THE JANUARY 3 HEARING

Aubert contends that the trial court should have continued the January 3 hearing on the first round of demurrers.

He forfeited this contention by failing to request a continuance at that time. "'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' [Citation.]" (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074.)

Separately and alternatively, there were no grounds for a continuance. Aubert argues that the first amended complaint mooted the original complaint, and therefore the trial court should have given defendants a continuance to answer or demur to it. But Aubert had filed that complaint improperly, without leave of court. (Code Civ. Proc., § 472, subd. (a).) Hence, it was a "nullity." (*Karp v. Dunn* (1964) 229 Cal.App.2d 192, 194-195.) The trial court had to strike it; it would have been error to require defendants to respond to it.

---

[7] Aubert repeatedly notes that each of his complaints stated: "Plaintiff preserves all his rights, known or unknown to him, and beseeches the court to act in face of clear duty." It is not clear what his point is. This incantation has no legal significance. Certainly it does not ward off forfeiture.

In a related argument, Aubert contends that the trial court erred by striking the first amended complaint because defendants had not filed a properly noticed motion to strike. As discussed, he forfeited this contention by failing to raise it under a proper heading. Moreover, he also forfeited it by failing to raise it below.

Even if not forfeited, it lacks merit. Arguably, a party must give notice of a motion to strike. (See Code Civ. Proc., § 435.) The trial court, however, "may, upon a motion . . . , *or at any time in its discretion* . . . [¶] . . . [¶] . . . [s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state . . . ." (Code Civ. Proc., § 436, subd. (b).) Striking the first amended complaint was a "ministerial act" that "could be done without notice." (*Hale v. Laden* (1986) 178 Cal.App.3d 668, 673.)

Finally, Aubert cannot show prejudice. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Elsner v. Uveges* (2004) 34 Cal.4th 915, 939.) Even if the trial court had required defendants to file a noticed motion to strike, the first amended complaint would eventually have had to be stricken anyway.

V

JUDICIAL BIAS

Aubert contends that the trial judge was biased in favor of "card-carrying members of the attorney bar" and against "pro pers."

He forfeited this contention by failing to raise it below. (See *People v. Farley* (2009) 46 Cal.4th 1053, 1110.) A claim that a judge is disqualified for bias must be raised "at the earliest practicable opportunity after discovery of the facts constituting the

ground for disqualification." (Code Civ. Proc., § 170.3, subd. (c)(1).) The failure to do so forfeits the claim. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)

Aubert additionally forfeited any claim of bias by failing to seek review in this court by way of a prompt writ petition. A statutory claim of judicial bias (see Code Civ. Proc., § 170.1) cannot be raised on appeal; it can be raised in an appellate court only by writ. (Code Civ. Proc., § 170.3, subd. (d); *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 300.) Moreover, a constitutional claim of judicial bias cannot be raised on appeal unless the appellant has previously raised a statutory claim by writ. (*Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1339.) "[A] litigant should seek to resolve such issues by the required statutory means and 'his negligent failure to do so may constitute a forfeiture of his constitutional claim.' [Citation.] This is particularly true in civil cases where 'a constitutional question must be raised at the earliest opportunity or it will be considered to be waived.' [Citations.]" (*Ibid.*)

In any event, Aubert has not shown so much as a hint of bias. All of the supposed evidence of bias that he cites comes from the January 3 hearing.[8] At that hearing, counsel for Ontario asked the trial court to sustain the demurrer without leave to amend. She said, "He cannot amend such that it would overcome any demur[rer]. There was no

_____

[8] Officer Sandoval argues that any error at the January 3 hearing was "waived," because the trial court gave Aubert leave to amend and he did subsequently amend. However, if the trial court did display bias toward Aubert at the January 3 hearing, that would mean it was disqualified from any further proceedings. (Code Civ. Proc., § 170.3, subd. (a).)

government claim." "[W]hy would we make the City pay for another demur[rer] hearing when . . . [t]here's no way this can go forward against the City[?]"

The trial court replied that it had not yet read the first amended complaint: "I'm okay with your representation, but I haven't seen it. For our purposes today, all I'm going to do is sustain the demur[rer] as to this complaint, . . . with leave to amend. . . . We already have an attempt to file an amended complaint, and . . . if there is, as Counsel represents, those insurmountable defects, then we'll address it."

It added, "I will tell you, Mr. Aubert, . . . you need to think about how you want to proceed with this, . . . particularly the government claim, normally that has to be presented within six months . . . . So you're going to have a real — I'm not sure if there's any basis to deal with that in terms of your allegation, but I don't know that, at least on the surface — I accept — I'm considering Counsel's representation, but I haven't seen the proposed amended pleading. So I'm letting you know that's going to be a problem."

Apparently, in Aubert's view, this shows that the trial court had already decided, without even reading his first amended complaint, that it was going to sustain a demurrer to it (and/or to any future amended complaint).

That is an arsy-versy view of the trial court's remarks. The trial court was sustaining a demurrer to the original complaint, based in part on failure to file a government claim. It was reasonable for it to conclude that Aubert was likely to have difficulty stating any kind of claim against Ontario at all. Accordingly, it gave him some

13

well-intentioned and entirely correct advice — to "think about" how he was going to solve this "problem."

If the trial court had really predetermined the matter, it would have just sustained Ontario's demurrer *without* leave to amend. Instead, it denied counsel's request that it do so. It specifically said it had not predetermined anything: "I haven't seen the proposed amended pleading." "I'm not sure if there's any basis to deal with [the absence of a government claim] in terms of your allegation, but I don't know that . . . ." "[I]f there is, as Counsel represents, those insurmountable defects, then we'll address it."

Aubert asserts that the trial court had a "duty" to read his first amended complaint. Not so. As discussed, Aubert had improperly filed it without leave of court. The trial court therefore struck it. At that point, its contents were irrelevant. Moreover, the trial court's failure to read his first amended complaint was harmless. If Aubert wanted the trial court to rule on its validity, all he had to do was refile it. Instead, he chose to amend it further.

Similarly, Aubert notes that, when he tried to argue that his opposing counsel had had enough time to read the first amended complaint, the trial court responded, "All of that doesn't matter at this point." "We're starting over again." Aubert complains that the trial court "treated the amended complaint with disdain as if it did not matter." For legal purposes, however, it *did* not matter.

Aubert argues that the trial court, despite having just sustained a demurrer to the original complaint, should have ignored its own ruling; he cites the legal principle that an

14

amended complaint supersedes the original complaint. Not so. The trial court could properly view its ruling, at least with respect to the original complaint, as correct. Thus, it could properly warn Aubert that, *if* an amended complaint had the same defect, *then* it would have to make the same ruling. Aubert proceeded to file an amended complaint that did have the same defects, and it proceeded to do so. The legal principle that he cites was simply not involved.

In Aubert's view, the trial court was setting him up; it struck the first amended complaint without reading it because, in general, the more times demurrers have been sustained, the more appropriate it is to sustain the next demurrer with prejudice. This ignores the fact that striking a complaint as improperly filed is not the same as sustaining a demurrer to it; it expresses no view regarding the sufficiency of the allegations. Ultimately, the trial court sustained the second round of demurrers without leave to amend because Aubert did not show how he could cure the defects in his complaint. He does not contend that this was error.

Finally, Aubert claims the trial court "coerc[ed]" him into further amending — rather than simply refiling — his first amended complaint. Specifically, he claims it coerced him into combining what had been multiple causes of action into a single "common count."**9** Nothing the trial court said or did was coercive. And the trial court

---

**9** The second amended complaint does not plead anything that we would call a common count. (See Black's Law Dict. (11th ed. 2019) [count, def. 2].) Apparently Aubert means a cause of action that is a combination of multiple previously pleaded causes of action.

said nothing about how many counts there were.  Its comments related exclusively to how Aubert might overcome his failure to file a government claim.[10]  In any event, he does not explain how his first amended complaint would somehow have survived a demurrer even though the second amended complaint did not.

## VI

## THE DEMURRERS TO THE SECOND AMENDED COMPLAINT

A.  *Forfeiture*.

As discussed in part III, *ante*, Aubert has forfeited any contention that the trial court erred by sustaining the demurrers to the second amended complaint.

He has also forfeited such a contention for a separate and additional reason.  He discusses three of the grounds of the demurrers:  the litigation privilege, failure to file a government claim, and failure to allege justifiable reliance.  But that leaves two unchallenged grounds:  the statute of limitations, and the effect of the judgment in the underlying action.

---

[10]  In his notice designating the record on appeal, Aubert claimed that the trial court "instruct[ed]" him to draft the second amended complaint as "a common count" and made a "hand gesture of interlocking fingers as he spoke."  He claimed that this was "missing" from the record.  There is indeed no such "instruction" in the record.  Any such hand gesture, by its nature, necessarily also is not in the record.

Aubert filed a motion to "correct" the reporter's transcript so as to include the supposed instruction.  The court reporter, however, affirmed that the transcript was correct.

We must treat the record as accurate.  "[F]or the purpose of appellate review, what is not in the record does not exist."  (Lane, Goldstein Trial Technique (3d ed. 1991) § 13:36.)

16

"A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground. [Citations.]" (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.) "'A judgment or order of the lower court is *presumed correct* . . . . [E]rror must be affirmatively shown . . . .' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "Issues not raised in the appellant's opening brief are deemed waived or abandoned. [Citation.]" (*W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 149, fn. 7.)

Aubert has not argued that the trial court erred by sustaining the demurer on the two unchallenged grounds. Necessarily, then, he has not shown that it erred at all.

B.  *Merits*.

Even aside from forfeiture, Aubert's contentions lack merit.

1.  *The litigation privilege*.

Aubert cites Evidence Code section 956, which provides, "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." (*Id*., subd. (a).)

A privilege "under this article" refers to the attorney-client privilege. (Evid. Code, §§ 950-962.) The litigation privilege (Civ. Code, § 47, subd. (b)) is distinct from the attorney-client privilege. It has no similar exception.

Aubert also mentions judicial estoppel. Officer Sandoval's police report was not a judicial decision; it could not judicially estop Beltran from testifying differently at trial. In any event, the litigation privilege would still apply.

17

2. *Failure to file a government claim.*

Aubert argues that, once he made a complaint to the Ontario Police Department, it had a duty to advise him of the government claim requirement. Not so. A public entity has "no duty to advise [a claimant] of the claims statutes . . . ." (*Tyus v. City of Los Angeles* (1977) 74 Cal.App.3d 667, 673.)

3. *Failure to allege justifiable reliance.*

Aubert argues that he relied on Beltran's statement to Officer Sandoval, in which she admitted coming close to the car (but did not admit hitting Aubert), by filing suit against her and Hino Motors. However, this is an argument that he relied on the *truthful* portion of her statement. It does not show that he relied on anything *fraudulent*.

In his second amended complaint, he alleged that Beltran committed fraud by testifying falsely that she never hit him, that she never got within 12 feet of the car, and about what his raised arm meant. However, he never alleged that he relied on these statements. It is hard to see how he could have.

## VII

## DISPOSITION

The judgment is affirmed.  Hino and Officer Sandoval are awarded costs on appeal against Aubert.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____

P. J.

We concur:

SLOUGH_____

J.

FIELDS_____

J.

19